IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:24-cr-00320-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DERRICK PATRICK BERNARD, JR.,

    Defendant.

---

### MOTION TO DISMISS DUE TO FIRST AMENDMENT VIOLATION

---

    Defendant DERRICK BERNARD, JR., through counsel, and moves this Court to dismiss both counts in the Indictment because they impermissibly criminalize constitutionally protected political speech and fail to state an offense under 18 U.S.C. § 844(e). The Government's theory fundamentally misapprehends both the statutory framework and constitutional limitations governing "true threats." The Indictment attempts to transform protected political expression - specifically designed to generate voter outrage and support for a candidate Mr. Bernard actively backed - into a criminal threat. This transformation cannot withstand scrutiny under either statutory analysis or First Amendment principles.

    The Government's theory contains an inherent contradiction that proves fatal to the prosecution: According to the Indictment's own allegations, Mr. Bernard was a vocal supporter of Candidate 1 who expressed his intent to help the candidate win, told the candidate he was

"mobilizing my squadron" to help get to the "finish line," and ultimately celebrated the candidate's victory. The alleged conduct - a staged cross burning captured on video and distributed with messaging that expressly condemned the act - was part of a calculated political strategy to generate voter outrage and support for his preferred candidate. This is precisely the kind of crude but constitutionally protected political expression that falls outside the narrow category of "true threats." *See Watts v. United States*, 394 U.S. 705, 708 (1969).

### I. The Court Must Conduct an Independent Review of First Amendment Issues

Before addressing the substance of the motion, we must establish the proper standard of review. When First Amendment rights are implicated, as they clearly are here, courts have a special duty to examine the record independently. This independent examination is not merely permissible - it is constitutionally mandated.

The question of whether speech constitutes a "true threat" must not be relegated, at least in the first instance, to jury determination. Rather, the trial court bears an affirmative constitutional duty to conduct an independent examination of the alleged statements and their surrounding context to determine whether they fall within the narrow category of "true threats" unprotected by the First Amendment. This principle flows from the Supreme Court's recognition that "the question is one of alleged trespass across 'the line between speech unconditionally guaranteed and speech which may legitimately be regulated.'" *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964). Where that line must be drawn, courts must "examine for ourselves the statements in issue and the circumstances under which they were made" and

2

conduct "an independent examination of the whole record" to ensure the judgment does not intrude upon constitutionally protected expression. *Id*. This mandate for independent judicial review was unanimously reinforced in *Bose Corp. v. Consumers Union, Inc.*, where the Court emphasized that "the rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact." 466 U.S. 485, 501 (1984). The Tenth Circuit has explicitly recognized that "the lesson of Bose" requires courts to conduct an "independent examination" of "constitutional facts" implicating First Amendment protections. *United States v. Friday*, 525 F.3d 938, 949 (10th Cir. 2008). While Bose arose in the defamation context, its reasoning extends "well beyond that narrow context" to any case involving potential encroachment on First Amendment rights. *Id*. This rule of independent review serves a critical function: it reflects "a deeply held conviction that judges must exercise such review in order to preserve the precious liberties established and ordained by the Constitution." *Bose*, 466 U.S. at 510-11. The necessity for such review is particularly acute in the context of alleged threats, where "providing triers of fact with a general description of the type of communication whose content is unworthy of protection has not, in and of itself, served sufficiently to narrow the category, nor served to eliminate the danger that decisions by triers of fact may inhibit the expression of protected ideas." *Id*. at 505. Therefore, this Court not only may, but must, determine as a threshold matter whether the communications alleged in the Indictment constitute "true threats" outside First Amendment protection.

II. Charges

Mr. Bernard stands charged in a two-count Indictment premised on alleged violations of 18 U.S.C. § 844(e). Count One charges a Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, specifically alleging that Mr. Bernard conspired to maliciously convey false information about a cross burning and to willfully make a threat via the internet to intimidate a political candidate. Count Two charges a substantive violation of 18 U.S.C. § 844(e), alleging that Mr. Bernard used the internet to make a threat <u>and</u> to maliciously and knowingly convey false information about an alleged attempt to intimidate the candidate through a cross burning staged in front of a campaign sign that had been defaced with a racial slur. *See Indictment*, (ECF Doc. 1.).

III. Statement of Facts as Alleged in the Indictment

The Indictment's own allegations establish a narrative of political theater rather than true threats. *For purposes of this motion only*, Mr. Bernard accepts these allegations as true:

A. Context of Political Support

1. The events occurred during a mayoral runoff election in Colorado Springs in May 2023 between two candidates: Candidate 1 (who is Black) and Candidate 2 (who is White). *Indictment*, (ECF No. 1 ¶ 2).

2. Mr. Bernard was associated with a non-profit, minority-owned, independent media organization in Colorado Springs. *Id.* ¶ 3

4

3. Mr. Bernard had direct communications with Candidate 1 in April and May 2023, expressing his support and discussing campaign coverage. *Id.* ¶¶ 6(b), (f), (g), (h), (i).

4. In messages to Candidate 1, Mr. Bernard stated he was "mobilizing my squadron" "[b]lack ops style" to help get Candidate 1 to the "finish line." *Id.*

5. Mr. Bernard expressed to both Candidate 1 and others that they could not allow the "Klan" to "run the city" again. *Id.*

### B. The Alleged Incident

6. The Indictment alleges Mr. Bernard participated in staging a cross burning between 2:30 a.m. and 3:30 a.m. on April 23, 2023, in a grassy area near the intersection of two "major traffic arteries" in Colorado Springs. *Id.* ¶ 6(d).

7. Crucially, the Indictment contains no allegation that anyone witnessed the cross burning in real time, other than those involved in creating the video. *Id.*

8. A short video of the burning was created, approximately 4 seconds in length. *Id.*

### C. Distribution and Context

9. Later that day, the video was distributed to multiple media outlets via email from a purported "concerned citizen" who expressed being "disheartened and outraged by the cross burning." *Id.* ¶ 7(g).

10. The email explicitly condemned the act as a "hate incident" and insinuated that supporters of Candidate 2 had carried out the cross burning to suppress votes. *Id.*

5

11. The Indictment details that the co-defendants monitored the video's traction in news and social media. *Id.* ¶¶ 7(j)-(m).

### D. Aftermath

12. Candidate 1 won the runoff election on May 16, 2023. *Id.* ¶ 6(i).

13. Mr. Bernard sent congratulatory messages to Candidate 1, stating "we got you through it all brother" and indicating they would "handle business" another time. *Id.*

14. Mr. Bernard later shared information about applying for city jobs, expressing interest in obtaining "favors quicker than later." *Id.* ¶ 6(j).

## IV. The Supreme Court's Limited and Precise "True Threat" Jurisprudence

The Supreme Court has carefully circumscribed when speech loses First Amendment protection as a "true threat." This jurisprudence establishes critical distinctions between protected political expression and true threats, even when the protected speech is crude, offensive, or inflammatory.

### A. Watts and Political Hyperbole

The seminal case of *Watts v. United States* established that "political hyperbole" cannot constitute a true threat. 394 U.S. 705, 708 (1969). In *Watts*, the Court considered a statement by an anti-war protester who said that if drafted, "the first man I want to get in my sights is L.B.J." *Id.* at 706. Despite the explicitly threatening language directed at the President, the Court held this was protected speech because it was merely "a kind of very crude offensive method of stating a political opposition." *Id.* at 708.

6

The Court emphasized several contextual factors that distinguished political hyperbole from true threats:

1. The political context of the statement

2. The conditional nature of the threat

3. The reaction of the listeners

4. The public setting of the remarks

### B. NAACP v. Claiborne Hardware and Political Movement Speech

In *NAACP v. Claiborne Hardware* Co., 458 U.S. 886 (1982), the Court again protected arguably threatening language in a political context. The Court considered statements by a civil rights leader who told boycott violators that "we're gonna break your damn neck." *Id.* at 902. Despite this explicitly violent rhetoric, the Court held the speech was protected because it occurred in the context of a political movement.

The Court emphasized:

1. The broader context of social change

2. The role of hyperbole in political movements

3. The distinction between advocacy and true threats

4. The public nature of the statements

### C. Virginia v. Black and Cross Burning

Most directly relevant here, *Virginia v. Black*, 538 U.S. 343 (2003), specifically addressed when cross burning can constitute a true threat. The Court held that cross burning can be

7

proscribed only when done "with intent to intimidate" the victim. *Id.* at 362. Crucially, the Court recognized that cross burning <u>can</u> serve multiple expressive purposes beyond intimidation, including as:

1. "A statement of ideology"

2. A ritual or "symbol of group solidarity"

3. A prop in a "movie" or "play"

4. A form of political expression

*Id.* at 365-66.

The Court struck down a provision that treated cross burning as prima facie evidence of intent to intimidate, holding that the First Amendment requires proof of specific intent. *Id.* at 364-65. This holding emphasizes that even acts traditionally associated with intimidation can be protected speech when performed for expressive purposes.

### V. The Tenth Circuit's Implementation of True Threat Doctrine

The Tenth Circuit has developed a careful framework for distinguishing true threats from protected speech, one that requires both subjective intent and objective analysis of context.

#### A. The Intent Requirement

Following *Virginia v. Black*, the Tenth Circuit requires proof that a defendant "intended the recipient of the threat to feel threatened." *United States v. Heineman*, 767 F.3d 970, 978 (10th Cir. 2014). This subjective intent requirement is constitutional in origin and cannot be circumvented by statutory construction.

8

### B. Context and Political Speech

In *United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999), the Circuit emphasized that context determines whether speech constitutes a true threat. The court explained that "true threats" comprise only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 395-96.

### C. Requirement of Specific Intent to Threaten

The Tenth Circuit has consistently held that § 844(e) requires proof of specific intent to threaten. See *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005). This requirement aligns with both statutory construction and constitutional mandate.

## VI. The Indictment Fails to State an Offense Because It Does Not Allege a True Threat

### A. Failure to Allege Specific Intent to Threaten

The Indictment fundamentally fails because it does not allege - and indeed, its factual allegations preclude - that Mr. Bernard acted with the specific intent to threaten or intimidate. The Government's own allegations establish three critical points that negate any possible inference of intent to threaten:

#### 1. Consistent Support of the Alleged Victim

The Indictment details Mr. Bernard's consistent support for Candidate 1, including: (1) Direct communications about helping the campaign; (2) Statements about getting to the "finish line"; (3) Expressions of opposition to perceived racist forces; and (4) Celebration of the

9

candidate's victory. These allegations are fundamentally incompatible with an intent to threaten or intimidate the candidate. No reasonable reading of the Indictment suggests Mr. Bernard intended to make Candidate 1 "feel threatened" as required by *Heineman*.

### 2. Theatrical Nature of the Conduct

The manner of the alleged cross burning demonstrates it was theatrical performance rather than true threat: (1) Staged in middle of night at public intersection; (2) Filmed for later distribution; (3) No allegation anyone witnessed it in real time; and (4) Created specifically for media dissemination. Unlike cases involving crosses burned in victims' yards, this incident was orchestrated specifically to create media content. The theatrical nature of the conduct precludes a finding of true threat under *Black*.

### 3. Contextual Distribution

The distribution of the video actively disavowed and condemned the cross burning: (1) Expressed outrage at the act; (2) Blamed political opponents; (3) Urged support for Candidate 1; and (4) sought to mobilize voters. This context definitively establishes the expressive purpose was political theater, not threats. *See Viefhaus*, 168 F.3d at 396 (context determines whether speech constitutes true threat).

### B. Failure to Allege Objective Threat Elements

Even if the intent requirement could somehow be satisfied, the Indictment fails to allege facts establishing an objective threat:

10

1. No Direct Communication—The alleged threat was not communicated directly to any victim but was distributed through media channels with explicitly non-threatening commentary.

2. No Immediate Prospect of Harm—The video documented a past event, staged for cameras, with no suggestion of future action.

3. No Specific Target—The conduct was not directed at any specific individual or group but was staged as general political commentary.

4. Expressly Disavowed Intent— The distribution explicitly condemned rather than embraced any threatening message.

### VII. The First Amendment Independently Bars This Prosecution

#### A. Protected Political Expression

Even if the Government could somehow establish the elements of § 844(e), the First Amendment bars this prosecution because Mr. Bernard's alleged conduct constitutes protected political expression under three independent theories:

#### 1. Political Hyperbole Under *Watts*

The Supreme Court has repeatedly held that crude or offensive methods of political expression remain protected. *See Watts*, 394 U.S. at 708. This protection extends even to explicit threats against the President when made as political commentary. Here, the alleged conduct was: (1) Set in political context; (2)Made for expressive purpose (3) Distributed with political commentary; and (4) Aimed at political mobilization

### 2. Movement Speech Under *Claiborne*

The allegations place this case squarely within Claiborne's protection of movement speech: (1) Connected to political campaign; (2) Aimed at social change; (3) Used provocative imagery; and sought to mobilize community.

### 3. Expressive Conduct Under *Black*

Black explicitly recognizes that cross burning can constitute protected expression when done for ideological rather than threatening purposes. Here, all contextual factors indicate expressive purpose:(1) Political setting; (2) Media creation; (3) Express condemnation; and (4) Campaign connection.

## B. Constitutional Avoidance Requires Dismissal

The constitutional problems raised by this prosecution are not merely theoretical. They go to the heart of First Amendment protections for political speech during campaigns. The doctrine of constitutional avoidance counsels against interpreting § 844(e) to reach such protected expression. See *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

## VIII. Section 844(e) Cannot Reach Protected Political Speech

The Government's novel attempt to use § 844(e) to prosecute theatrical political expression raises serious constitutional concerns that require dismissal:

## A. Statutory Purpose and Scope

Section 844(e) has been consistently interpreted in this Circuit as addressing bomb threats and genuine threats of arson - not symbolic political speech, however crude or

offensive. *See United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999) (applying § 844(e) to bomb threats); *United States v. Leaverton*, 835 F.2d 254 (10th Cir. 1987) (same). Indeed, as demonstrated in co-defendant Blackcloud's Motion to Dismiss (ECF. No. 71), research reveals no case in any circuit where § 844(e) has been used to prosecute symbolic burnings of one's own property, as opposed to genuine threats to destroy another's property.

### B. Constitutional Construction

To avoid constitutional infirmity, § 844(e) must be construed to reach only "true threats" as defined by the Supreme Court. This construction precludes application to protected political expression.

### C. Overbreadth Concerns

The Government's proposed construction would render the statute substantially overbroad by criminalizing a wide swath of protected political speech.

## CONCLUSION

The Indictment should be dismissed because it fails to allege a true threat and seeks to criminalize constitutionally protected political expression. The Government's own allegations establish Mr. Bernard's actions were theatrical political commentary designed to help, not threaten, Candidate 1. Neither the statute nor the Constitution permits prosecution of such protected speech.

13

Dated February 18, 2025.

> Respectfully submitted,
>
> *s/ A. Tyrone Glover Jr.*
> TYRONE GLOVER LAW, LLC
> Tyrone Glover #41529
> 2590 Walnut Street
> Denver, CO 80205
> tyrone@tyroneglover.com
> Phone: 303-577-1655
>
> *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, a true and correct copy of the foregoing **MOTION TO DISMISS DUE TO FIRST AMENDMENT VIOLATION** was electronically filed with the Clerk of the Court through the Court's CM/ECF system, which shall provide notice and copy hereof upon all parties.

<u>s/ A. Tyrone Glover</u><br>A. Tyrone Glover #41529