# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Regina M. Rodriguez

Civil Action No. 24-cr-00320-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DERRICK PATRICK BERNARD, JR.,

    Defendant.

## ORDER

This matter is before the Court on Defendant Derrick Bernard's Motion to Suppress, ECF No. 83. The Government filed a response, ECF No. 104. Having considered the briefing and the exhibits, the Court finds that no hearing is necessary to resolve the Motion.[1] For the reasons stated below, the Motion is granted in part and denied in part.

### I. BACKGROUND

Defendant is charged with two counts in the Indictment: Count One: Conspiracy to Commit an Offense Against the United States, namely a violation of 18 U.S.C. § 844(e),

---

[1] The choice to hold an evidentiary hearing on a motion to suppress is within the discretion of the Court. *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995). A hearing is required only when the motion to suppress raises "factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." Id. A district court may deny a request for an evidentiary hearing if the motion to suppress only argues about the legal effect of information, rather than disputes the underlying facts at issue. *See United States v. Mathews*, 928 F.3d 968, 978 (10th Cir.), *cert. denied*, 140 S. Ct. 460, 205 L. Ed. 2d 285 (2019). In this case, Defendant raises only legal issues about the sufficiency of the Warrant (staleness, nexus, and the good-faith exception) and does not challenge the factual allegations themselves. (Doc. # 24). Therefore, the Court declines to hold an evidentiary hearing.

to willfully make a threat and maliciously convey false information about a cross burning as an attempt to intimidate a political candidate via the internet, contrary to 18 U.S.C. § 371 and punishable by up to 5 years of imprisonment; and Count Two: substantive violation of 18 U.S.C. § 844(e), punishable by up to 10 years of imprisonment, for using the internet to make a threat, and to maliciously and knowingly convey false information about an alleged attempt to intimidate the candidate by a cross burning. ECF No. 1.

On May 19, 2023, Detective Nathan Jorstad ("Detective Jorstad") of the CSPD applied for a search warrant to search and seize Defendant and "any cellular phones or smart devices on his person or in his possession." ECF No. 85-1. In his affidavit, Detective Jorstad explains the facts that gave rise to probable cause:

- Detective Jorstad has been a police officer since February 2002 and has served as a detective with the CSPD Intelligence Unit since June 2022.

- On April 25, 2023, Detective Jorstad was assigned to investigate a bias-motivated criminal mischief case where an unknown suspect spray painted "NIGGER" in red on a campaign sign for mayoral candidate Yemi Mobolade at the northwest corner of N. Union Blvd. and E. Fillmore St. in Colorado Springs. The suspect also lit a wooden cross, which was positioned a few feet in front of the campaign sign, on fire.

- Detective Jorstad learned that on April 23, 2023, a citizen of Colorado Springs discovered the spray painted sign and burned cross and took them down to keep them from being posted on social media. He took photos and e-mailed them to a campaign volunteer for Yemi Mobolade.

- Also on April 23, 2023, an email was sent to various media outlets, multiple Colorado government officials, several activist groups, as well as Yemi Mobolade's campaign email address with a photo and four second video of the vandalized sign and the wooden cross actively burning. The author of the email noted that the photo and video were received from an "anonymous tip." The email expressed outrage at the "hate incident" and suggested it was done to intimidate Yemi Mobolade and suppress voter turnout.

- Detective Jorstad reviewed the metadata from the video and determined that the video was created at 3:21 a.m. on April 23, 2023 on the northwest corner of N. Union Blvd. and E. Fillmore St.

2

- Detective Jorstad then reviewed footage from traffic cameras and surveillance footage from businesses in the area of N. Union Blvd. and E. Fillmore St.
- From the footage, Detective Jorstad observed the following:
  - At 2:38 a.m., two vehicles parked on the side of the roadway, each positioned on in front of the other, near where the vandalization and cross burning occurred. Both vehicles appeared to be light color white or silver sedans.
  - At 2:43 a.m., two individuals are seen walking from the parked vehicles. One of the suspects appears to be carrying a long object wrapped in a blanket. The individuals are last seen walking toward the location of the vandalization. One individual was wearing a black top and red pants and the other was wearing all black clothing.
  - At 3:02 a.m., an individual wearing all black is seen walking back toward the two vehicles. The suspect is still carrying the object wrapped in a blanket. At 3:03 a.m., the second suspect wearing the red pants is seen walking back toward the parked vehicles. At 3:06 a.m., a suspect can be vaguely seen on the passenger side of the rear vehicle getting into the vehicle and the vehicle then drives away. Detective Jorstad suspected the individuals were scouting and preparing for the actual crime that occurred around 3:21 a.m.
  - At approximately 3:15 a.m., a vehicle, which appeared to be a light color white or silver sedan, pulled over in the area and stopped for about six seconds before driving away. Detective Jorstad believed this vehicle looked similar to the vehicle that drove away at 3:06 a.m.
  - At around 3:21 a.m., a fire erupts near the campaign sign. Once the fire ignites, the footage briefly showed what appeared to be an individual wearing a red color article of clothing moving next to the sign as well as what appeared to be a suspect in dark color clothing. Both appeared to walk away quickly toward the west. Detective Jorstad noted that the metadata from the video of the burning cross sent via email correlates to the timestamp on the traffic camera footage for when the fire ignited.
  - Between 3:15 and 3:28 a.m., there is additional movement around the vehicles and the vehicles both drove in close proximity southbound on Templeton Gap Rd.
  - Detective Jorstad obtained video evidence from a 7-Eleven convenience store in the vicinity. He noted that the 7-Eleven is located on an intersection a quarter mile west of Templeton Gap Rd. At 3:29 a.m., a light color silver or gold color sedan is observed pulling into the 7-Eleven. The vehicle looked the same and had similar attributes indicating it was the same vehicle that was

    observed earlier. Detective Jorstad and other detectives determined the vehicle was likely a 2003 to 2007 Saturn Ion sedan.

- At 3:30 a.m., a female suspect walks away from the suspect vehicle and into the 7-Eleven. The female suspect appeared to be a Hispanic female in her mid to late 30's wearing a red jogging suit sweatshirt and pants. The red pants are consistent with what one of the suspects was wearing.

- With the vehicle make and model, Detective Jorstad conducted a search of police traffic database and discovered that a gold color 2005 Saturn Ion bearing Colorado license plate CSEI18 was one of the vehicles with a possible match (the "Saturn"). The Saturn had a dent in the passenger side rear corner of the bumper which matched the dent in the suspect vehicle seen on the traffic camera footage.

- Detective Jorstad learned that license plate was registered to Ashley Hernandez. A comparison of the Colorado Department of Revenue license photo with that of the 7-Eleven suspect showed that they appeared to be the same person.

- Detective Jorstad and other detectives searched a variety of stock vehicle photos to determine a make and model of the second vehicle that was observed pulling up behind the Saturn at 2:37 a.m. and determined that it was likely a 2007 model Mercedes sedan, specifically an E350 model.

- Additional investigation revealed that Defendant was in a relationship with the driver of the Saturn, Ms. Hernandez, and that Defendant worked in the 1826 E. Platte Ave. building.

- On May 12, 2023, during a surveillance operation, detectives observed a silver Mercedes bearing temporary plate 5051127 (the "Mercedes") pull into the parking lot of the 1826 E. Platte Ave. building and observed a black male matching the likeness of a law enforcement database photo of Defendant exit the vehicle. Detective Jorstad noted the similarities in the vehicle to those of the traffic camera image from the suspected crime scene.

- Additional surveillance operations resulted in observations of both the Saturn and Mercedes being parked outside Ms. Hernandez's residence and Defendant exiting the residence, entering the Mercedes, and driving away.

- Detective Jorstad is aware that criminals often carry their personal cell phones and smart devices with them when conducting criminal activity and that suspects often record or take photographs with those devices of their criminal activity and share them on various media sources. He believed that recovering the smart devices and cell phones in the possession of Defendant would result in additional evidence.

ECF No. 85-1. Detective Jorstad made the application to Magistrate/Judge of the District/County Court of El Paso County and received the Search Warrant the same day (the "Person/Phone Search Warrant"). *Id.* Detective Jorstad did not immediately execute the Person/Phone Search Warrant.

That same day, Detective Jorstad sought and received a second search warrant for the Mercedes (the "Mercedes Search Warrant"). ECF No. 85-2. The affidavit in support of the Mercedes Search Warrant is nearly identical to the affidavit in support of the Person/Phone Search Warrant.

The Mercedes Search Warrant authorized the search and seizure of:

- Any and all cellular phones or smart devices.
- Red spray paint, wooden construction materials, twine, lighters, fire accelerants or other items used for the construction/burning of a cross or the vandalism.
- Receipts for purchases of the above construction/vandalism items.
- Clothing matching what was worn during the commission of the crime.
- Items of indicia to include vehicle registration, bills, mail, photographs, or other paperwork.

ECF No. 85-2.

Both search warrants were executed on May 25, 2025. Officers located and detained Defendant, seizing a gold Apple iPhone from his person. The Mercedes was secured and impounded to facilitate a more thorough search. On May 26, 2023, Detective Summey, accompanied by Detective Jorstad and Sergeant Carter, conducted a search of the Mercedes at the police impound facility. During the search of the Mercedes, Detective Summey located a black bag on the passenger front floorboard containing a Sony "Handycam" camcorder video recording device model number FDR-AX53 with serial number 3222657 (the "Camcorder").

On June 30, 2023, a federal search warrant was issued authorizing the search of the data and contents of the iPhone. ECF No. 85-3. The forensic extraction and data download occurred on July 13, 2023. The probable cause articulated in the affidavit was substantially similar to that presented in the state court warrants. On May 30, 2023, Detective Jorstad sought and received an additional search warrant for the Mercedes which added "any and all devices capable of recording or storing digital media" and "downloading and viewing all digital media located on the [Camcorder]." ECF No. 85-4.

## II.  LEGAL STANDARD

The Fourth Amendment provides that "no warrant shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. If a search violates the Fourth Amendment, an exclusionary rule typically requires that the evidence obtained as a result of that search be suppressed. *Nix v. Williams*, 467 U.S. 431, 440–42 (1984). As a general matter, if the challenged search or seizure was conducted pursuant to a warrant, the defendant has the burden of proof to demonstrate that it violated the Fourth Amendment. *United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993).

A court "review[ing] the sufficiency of the affidavit upon which a warrant is issued" is tasked with "simply ensuring 'that the magistrate had a substantial basis for concluding that probable cause existed.' " *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). Such "[p]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Gates*, 462 U.S. at 238). Probable cause requires a nexus between the suspected criminal activity and the place to be searched. *United States v. Biglow*, 562 F.3d 1272, 1279 (10th

6

Cir. 2009). In reviewing a duly issued warrant, a court "accord[s] a ... judge's probable-cause finding 'great deference.' " *Id.* at 1281. Because the Fourth Amendment exhibits a "strong preference for warrants," a reviewing court must "resolve 'doubtful or marginal cases' by deferring to a magistrate judge's determination of probable cause," *id.* at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984)).

### III. ANALYSIS

Defendant argues that the searches of his person, car, cell phone, and camcorder violated the Fourth Amendment and that the fruits of those searches must be suppressed. Defendant raises three arguments: (1) the search of his person and the Mercedes were not supported by probable cause that evidence of the crime would still be present more than 25 days later; (2) the seizure of the Camcorder exceeded the scope of the warrant; and (3) there was an unconstitutional delay in searching the contents of the iPhone. ECF No. 83. Because each search was conducted pursuant to a warrant, Defendant bears the burden of showing that the Fourth Amendment was violated.

**A. Probable Cause for the Person/Phone Search Warrant and Mercedes Search Warrant**

Defendant argues that the affidavits supporting the Person/Phone Search Warrant and Mercedes Search Warrant lacked probable cause. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (quotation omitted). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions

7

of others." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Defendant argues that the affidavits "provide no basis to believe that [Defendant] would retain evidence of the crime on his person or in his vehicle nearly a month after the incident." ECF No. 83. Although this argument is not fully developed, the Court views this as an argument that the information contained in the affidavit was stale by the time the warrant was issued. "A search warrant may not issue if [it is] based upon information that has grown stale, *i.e.*, information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005) (citing *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir.1990)). "However, timeliness and relevance cannot be judged solely by the days of the calendar." *Id*. Rather, "whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id.* (citation omitted).

Here, the Court does not find that the affidavits for the Person/Phone Search Warrant or the Mercedes Search Warrant were based upon stale information. The suspected criminal offense occurred on April 23, 2023, and the warrants were sought just under a month later, on May 19, 2023. The affidavits are replete with facts tying Defendant and the Mercedes to the suspected criminal activity. *See* ECF No. 85-2. For example, the Person/Phone Search Warrant lays out the investigatory steps taken to tie Defendant to the suspected criminal offense and states:

> Your Affiant is aware that criminals often carry their personal cell phones and smart devices with them while conducting criminal activity. Your Affiant knows that suspects often record or take photographs with those devices of their criminal activity and often share those on various media sources

> including email and social media outlets. Smart devices are capable of being downloaded and often reveal historical location data as well. Your Affiant believes that recovering the smart devices and cell phones that are in the possession of Derrick Bernard . . . will result in additional evidence.

ECF No. 85-1.

Further, the Mercedes Search Warrant affidavit lays out the video footage and photos showing the vehicle used in the commission of the crime, the investigatory steps that CSPD took to identify the make and model of the vehicle as the Mercedes, and surveillance and investigation tying Defendant to the Mercedes. *Id.* The affidavit states that the "Affiant suspects that additional evidence of the crime, including cell phones, smart devices, spray paint, clothing, and wood construction materials that were used during the commission of the crime <u>may still be in located on Bernard's person or in the Mercedes he has been driving</u>." *Id.* (emphasis added). Viewed in a "in a commonsense, nontechnical manner," *see United States v. Barrera,* 843 F.2d 1576, 1581 (10th Cir. 1988), the affidavits support that evidence of the crime, which is believed to have been committed by Defendant using the Mercedes just under a month prior to when the warrant was sought, may still be stored in the Mercedes, and it is entirely reasonable to believe that Defendant would retain his cell phone on his person. Viewing the affidavits as a whole, the Court finds that the magistrate judge had a substantial basis to conclude that the information contained in the affidavit was timely. Accordingly, the Court will not invalidate the Person/Phone Search Warrant or Mercedes Search Warrant based on staleness.

### B. Seizure of Camcorder Exceeded Scope of Warrant

Next, Defendant argues the seizure of the Camcorder from the Mercedes exceeded the scope of the Mercedes Search Warrant, which authorized the search and seizure of

"cell phones and smart devices." ECF No. 83 at 8. Defendant asserts that the "camcorder falls outside even the most generous reading of these categories" and "[t]he officers' decision to seize the camcorder based on generalized concerns about evidence preservation exemplifies precisely the kind of discretionary rummaging that the Fourth Amendment's particularity requirement was designed to prevent." *Id.* In its response, the Government represents that "it does not intend to introduce the camcorder or any other evidence from the search of the Mercedes, so any questions about suppression of that evidence are moot." ECF No. 104 at 1 n.1.

The Fourth Amendment's particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). "[O]btaining a sufficiently particular warrant is just the first step to conducting a reasonable search. The officers tasked with executing a sufficiently particular warrant must conduct their search 'strictly within the bounds set by the warrant.' " *United States v. Loera,* 923 F.3d 907, 916 (10th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395 n.7, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure [of evidence] is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). This is "an exercise in reasonableness assessed on a case-by-case basis." *Loera*, 923 F.3d at 916.

Here, Defendant has a valid argument that the seizure of the Camcorder may have exceeded the scope of the warrant, which authorized search and seizure of cell phones

or smart devices. The Government does not set forth any argument as to why the seizure of the Camcorder fell within the scope of the warrant and instead represents it will not introduce the Camcorder as evidence. Accordingly, given the Government's representation, the Court will assume without deciding that the seizure of the Camcorder exceeded the scope of the warrant, and will exclude it from trial.

### C. Unreasonable Delay

Finally, Defendant next argues that "[t]he 35-day delay between the seizure of Bernard's iPhone and obtaining a warrant to search its contents constitutes an independent Fourth Amendment violation." ECF No. 83 at 9. "[A]n unreasonable delay in obtaining a search warrant can sometimes violate the Fourth Amendment." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013). "In assessing the reasonableness of a delay in seeking a warrant, however, we must take account of the totality of the circumstances wary of the temptation to impose rigid rules, bright-line tests, and mechanistic inquiries." *Id.* (internal citations and quotations omitted). The Court's task in each case is to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

Defendant argues that the 35-day delay between when CSPD seized the cell phone on May 25, 2023 and when it obtained the search warrant for the data on the cell phone on June 30, 2023 is unreasonable. The Court disagrees. In *United States v. Burgess*, the Tenth Circuit held that a forty-four day delay between the seizure of hard drives and securing a warrant for a search of the hard drives was not unreasonable where a warrant

11

was secured prior to the hard drives being seized, there was no indication officers were not diligent in executing the search, probable cause was unaffected by the delay, the reasons to search the computer and hard drives did not dissipate during the month and a half the items sat in an evidence locker, defendant did not identify any prejudice from the delay, and any delay was due to the agent's efforts to make sure the job was done right. 576 F.3d 1078, 1097-98 (10th Cir. 2009). The same is true here. The cell phone was seized pursuant to a warrant, and Defendant does not allege that there was any prejudice from the delay. Moreover, the reasons to search the cell phone did not dissipate in the month between when it was seized and when the warrant was obtained, and there is no reason to believe the officials were not diligent in their investigation. Accordingly, the Court does not find that suppression is warranted on this basis.

### D. Good Faith Exception

Moreover, even if the Court were to find the warrants invalid, the good faith exception would apply here. Under the good faith exception, even if a warrant fails to satisfy the Fourth Amendment's particularity requirement, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). The rationale for *Leon*'s good faith exception is the underlying purpose of the exclusionary rule—namely, to deter police misconduct. When an officer acts in good faith, there is nothing to deter. *Id.* at 3418.

An officer's reliance on a defective warrant still must be objectively reasonable: the government is not entitled to the good faith exception when a warrant is "so facially

deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 3420-21. "The test is an objective one that asks whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *U.S. v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009). "Not every deficient warrant, however, will be so deficient that an officer would lack an objectively reasonable basis for relying upon it." *Id.* at 1134.

Here, as explained above, the Court believes that each of the challenged searches was supported by a warrant with sufficient probable cause and particularity to satisfy the Fourth Amendment's requirements. However, even if one of the warrants was defective, the Court concludes that the good faith exception would apply in this case. The searches in this case were objectively reasonable under the circumstances. The affidavits carefully outlined the investigation, the places or items to be searched, and the evidence to be searched for based on the alleged crime. The warrants were presented to the magistrate judge, sworn, signed, and issued to law enforcement. Suppression under these circumstances would not serve to bolster the underlying purpose of the exclusionary rule—to deter police misconduct—as law enforcement had every reason to believe they were relying on valid warrants issued by a neutral and detached judicial officer. *See United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) ("The rationale for *Leon*'s good faith exception is the underlying purpose of the exclusionary rule—namely, to deter police misconduct."); *United States v. Riccardi*, 405 F.3d 852, 860 (10th Cir. 2005) ("[T]he suppression of evidence obtained pursuant to a warrant should be ordered only in the

unusual cases in which exclusion will further the purposes of the exclusionary rule."). Accordingly, the good faith exception would uphold the searches conducted in this action.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Suppress, ECF No. 83, is **GRANTED IN PART** to the extent it seeks suppression of the Camcorder, but **DENIED IN PART** as to the remaining arguments for suppression.

DATED: April 24, 2025.

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge